[Civil No. 3154.   Filed April 18, 1932.]

[10 Pac. (2d) 376.]

JOHN C. MATSON, Trading and Doing Business as L. A. & PHOENIX EXPRESS, Appellant, v. ED BRADBURY, Appellee.

Messrs. Windes & Miller, for Appellant.

Mr. V. L. Hash, for Appellee.

ROSS, J.—Ed Bradbury, as plaintiff, brought this action against John C. Matson, doing business as L. A. & Phoenix Express, as defendant, to recover damages for the breach of a contract of hire.

On January 9, 1930, by an agreement reciting that defendant was engaged in a general freight, express, and baggage business between Phoenix, Arizona, and Los Angeles, California, the parties bound themselves as follows: The defendant, to lease of plaintiff one 6–7 ton Stewart truck chassis No. 27X108 and trailer, and to employ him in the transportation of freight, express, and baggage between Los Angeles and Phoenix and between Phoenix and Los Angeles, guaranteeing to him a minimum of six trips per month, with a minimum tonnage of 90 tons per month, and a full tonnage with each trip from Los Angeles to Phoenix, and to pay him $17.50 per ton therefor, and $330 per month for commodities transported from Phoenix to Los Angeles; the plaintiff to enter defendant's employment; to accept no freight except for defendant's account; to furnish trucks and trailers; to keep the same up at his expense, paying all licenses, taxes, etc., and to furnish reliable, responsible, and capable drivers therefor; to maintain a 36-hour service between Phoenix and Los Angeles, for the above stipu-

lated compensation. The agreement was to go into effect as of its date and run for two years.

Plaintiff alleges in his complaint, in substance: That he and defendant undertook to carry out said agreement, and in pursuance thereof he did furnish one 6–7 ton Stewart truck chassis No. 27X108 and a trailer to transport the freight as provided in the contract, but that defendant failed to furnish the minimum tonnage guaranteed or to pay him such minimum compensation; that he was ready, able and willing to perform his part of the contract and to maintain a 36-hour service between the termini mentioned. He states his damages to be the minimum monthly tonnage of 90 tons @ $17.50 per ton for 5½ months in making trips from Los Angeles to Phoenix, and $330 per month for 5½ months for making trips from Phoenix to Los Angeles, or a total of $10,-477.50, upon which he admits defendant has paid him $6,722.84. He prays for the difference or $3,749.10.

He alleges a second cause of action upon another contract entered into two days after the first and in the same language. The same breach is alleged and the same damages.

The defendant admitted the execution of the contracts sued on, but denied plaintiff had available trucks and trailers in accordance with the contracts; alleged affirmatively that plaintiff was negligent, inattentive, and careless, ignored orders of defendant, did not receive and discharge freight in accordance with his agreements, and on at least four occasions remained away from defendant's depot or shipping point, necessitating the employment of other trucks, and thereby diminishing the tonnage for plaintiff; that his drivers were without experience and familiarity with the work of loading, and were often unable to load plaintiff's trucks; denied any indebtedness.

The case was tried to a jury, and resulted in a verdict in favor of plaintiff in the sum of $3,615. A motion being made for a new trial, it was granted, unless plaintiff filed a *remittitur* of $980. Such *remittitur* was filed, and judgment was entered for $2,635. From the judgment and from the order overruling the motion for new trial, defendant has appealed.

The trial court took the view that under each contract the plaintiff was entitled, whether he made six trips per month from Los Angeles to Phoenix and trucked 90 tons or less, to be paid the guaranteed minimum, providing he was ready, able, and willing to render such services, and to be paid $330 per month for return trips to Los Angeles, regardless of the tonnage, with a deduction if he made less than six monthly trips of the cost of the trips not made. In other words, the plaintiff was entitled to be paid for 90 tons per month per truck for 5½ months @ $17.50 per ton and $330 per truck per month for six return trips, minus the cost of any trips not made. That is, if in any month he made less than six trips, the cost he would have been put to to make the round trip should be deducted from the guaranteed minimum compensation.

This we believe to be a correct interpretation of the contracts. It is undisputed that defendant did not furnish the plaintiff the stipulated minimum tonnage for transportation from Los Angeles to Phoenix, and that plaintiff did not make six round trips per month, or for the 5½ months he was employed 33 round trips per truck, or 66 for the two trucks; but that he made only 44 round trips, leaving 22 not made. Defendant, however, undertook to show that plaintiff did not receive the minimum guaranteed tonnage for transportation because his drivers were incompetent and refused to accept freight offered, or were not accessible when wanted by defendant. It was shown that

one of plaintiff's drivers on one of his regular trips had failed to deliver a package to the consignee at Buckeye, a station on the regular traveled route between Los Angeles and Phoenix. The driver admitted such failure, but explained when he arrived in Buckeye it was night and consignee's place of business was closed. It was also shown that plaintiff had been directed by defendant to go to a mining camp a considerable distance off the regular route between Los Angeles and Phoenix and pick up and take to Los Angeles some mining machinery, which was not done. Plaintiff's employees admitted going to the mining camp for the machinery, and that they did not remove it to Los Angeles, because, as they said, there was not there on the ground adequate facilities to load the machinery, and that they did not have such facilities.

All other charges of shortcomings of the plaintiff were sharply disputed in the evidence and were for the jury's determination.

The failure to deliver the package at Buckeye, even if not justified, was a small matter, and it may be questioned whether under the contract plaintiff was required to depart from the regular route as far as the mining camp to pick up return loads, or to furnish facilities to load such heavy machinery in out of the way places. But, if it be granted that plaintiff's contract contemplated he should do that, he should not be wholly defeated for failure to do it. Substantial performance of contracts of service is sufficient. Complete, absolute performance is not required. For slight deviations or omissions defendant would be entitled to recoup but not entirely to defeat recovery. 13 C. J. 690, § 786. The defendant has made no claim of being damaged by any omission or defect in the service.

It was also admitted that plaintiff did not have the two trailers until two weeks or more after the commencement of the contract, but it appears that he was buying both trucks and trailers from defendant, and that the trailers were not put on sooner because of defendant's failure to make delivery of them.

Bearing in mind the state of the pleadings and the issues and the evidence *pro* and *con,* we will now take up the defendant's assignments of error.

He complains of the court's refusal to direct a verdict at the close of plaintiff's case, on the ground of failure to make a case and variance between the evidence and pleadings. When this motion was made, plaintiff had submitted evidence to the effect that he had accepted and transported all the freight, express and baggage defendant had offered to him, and that he was ready and able and willing fully to perform his part of the contracts. This evidence directly supported the pleadings, and was sufficient to take the case to the jury.

It is next said the court erred in allowing plaintiff to introduce testimony excusing nonperformance on his part when he had averred complete performance in his complaint. This does not correctly state the case set out in the complaint. As we read the complaint, it admits the plaintiff did not transport the minimum tonnage per month, but alleges the reason for his not doing so was because the defendant had failed to furnish him such tonnage.

The following instruction and two others of similar import are assigned as error:

"It is sufficient to say with respect to those contracts that if the plaintiff has fully performed on his part everything he was to do, which was to furnish two trucks and two trailers to run back and forth between Phoenix and Los Angeles and haul freight at the wish and desire of the defendant and whenever he was asked to do so, that is, when he wasn't

out on the road, that he would be entitled to recover the amount substantially which he has sued for which is $7,500.00 less certain items covering the cost of making trips between Los Angeles and Phoenix which he didn't make. He testified he didn't make 22 trips that he was entitled to make under this contract and that the reason he didn't make those trips was because the defendant didn't give him any freight to haul. Under the contract he was entitled to make at least six trips a month and now he says that in five and a half months he ought to have made 22 trips more than he did make, that he could have made those trips, that he was ready, able and willing with his trucks to make those trips and that if Mr. Matson had given him the freight to haul he would have made those trips. The cost of making those trips, those 22 trips between Phoenix and Los Angeles, round trips, should be deducted from the amount which he is claiming or $7,487.18. That amount less what it would cost him to make 22 trips back and forth between Los Angeles and Phoenix would be what he would be entitled to recover if he has fully performed the contract and was able, ready and willing at all times to perform it."

This instruction, it is said, is bad because it ignores "the failure of plaintiff to have trucks and trailers available for the first month or more of the contract" and "totally disregarded the failure of the plaintiff to pick up the load of mine machinery at Hassayampa." There was no failure to have trucks, and for any failure to have trailers the defendant, according to the evidence, was to blame. And it is not questioned but that plaintiff's facilities were sufficient to transport all freight offered. However, because the evidence showed that plaintiff did not have trailers for the first two or three trips made, the court on defendant's motion for new trial ordered a *remittitur* from the verdict in the sum of $980. As we have seen, the failure to pick up the mine machinery, if within the terms of the contract, would not defeat plaintiff's recovery. If defendant sustained any loss

or damage thereby, he might have recouped such damage.

It is said the instruction is a comment on the evidence because the court mentioned the amount sued for as the amount plaintiff was entitled to recover, less the cost of certain trips not made, also assumed to be 22 in number. But the figures and facts stated in the instruction were largely obtained from the contract itself and were not in dispute. It was not questioned but that plaintiff did not make, by 22 trips, the minimum number of trips stipulated, and was therefore saved the cost of such trips, for which defendant should receive credit. It will be noticed that by the instruction plaintiff's right of recovery is always predicated upon the jury's determination that he performed his part of the contract.

The instructions are not bad in the respects assigned, but are a very fair, plain and clear statement of the law applicable to the facts.

The plaintiff has filed a cross-appeal and assigned as error the court's order granting defendant's motion for a new trial, unless plaintiff would remit from the verdict $980. The record is that plaintiff filed a *remittitur* in accordance with the court's order, and that judgment was entered for the amount of the verdict less the *remittitur*. The plaintiff, having formally accepted the court's order, is in no position to complain; he is estopped to set up the court's order as error. *Florida East Coast Ry. Co.* v. *Buckles,* 83 Fla. 599, 92 South. 159; *Klock Produce Co.* v. *Diamond Ice & Storage Co.,* 98 Wash. 676, 168 Pac. 476; *Harrington* v. *Butte, A. & P. Ry. Co.,* 39 Mont. 22, 101 Pac. 149; *Fleming* v. *Smouse,* 73 W. Va. 188, 80 S. E. 144; *Sperry* v. *Hillman,* (Com. Pl.) 13 N. Y. Supp. 271; *Alabama & V. Ry. Co.* v. *Davis,* 69 Miss. 444, 13 South. 693; 3 Corpus Juris 671, § 546.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.